UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

DAVID STOCK FARM SERVICES, INC.,            Case No. 09-CV-0902 (PJS/LIB)

                    Plaintiff,

v.                                                     ORDER

NATURAL RESOURCES
CONSERVATION SERVICE and UNITED
STATES DEPARTMENT OF
AGRICULTURE,

                    Defendants.

      H. Morrison Kershner, PEMBERTON, SORLIE, RUFER & KERSHNER, for plaintiff.

      Friedrich A. P. Siekert, UNITED STATES ATTORNEY'S OFFICE, for defendants.

      David Stock Farm Services, Inc. ("DSFS") brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, seeking judicial review of the determination of the Natural Resources Conservation Service ("NRCS") and the United States Department of Agriculture ("USDA") that DSFS illegally converted two acres of wetland for farming purposes. The parties agree that fill was placed in the wetland, but disagree about when. DSFS says that the wetland was last filled in 1985. The NRCS says that the wetland was last filled in 2007. If the NRCS is right, then DSFS will no longer be eligible to receive certain federal farm benefits.

      The parties bring cross-motions for summary judgment. After careful review of the administrative record, the Court finds that, although the Court may have made a different decision as an original matter, the NRCS's decision is supported by substantial evidence and therefore must be upheld.

I. BACKGROUND

*A. Statutory and Regulatory Background*

This case arises under the so-called Swampbuster provisions of the Food Security Act of 1985, codified as amended at 16 U.S.C. §§ 3801, 3821-24. Despite their name, the Swampbuster provisions are designed not to bust swamps, but to protect them by preventing the conversion of wetlands. A wetland is "converted" if it is filled, drained, dredged, leveled, or otherwise manipulated for the purpose of producing (or improving the production of) an agricultural commodity. 16 U.S.C. § 3801(a)(7)(A); *Clark v. U.S. Dep't of Agric.*, 537 F.3d 934, 940-41 (8th Cir. 2008). Under the Swampbuster provisions, a person who converts a wetland after November 28, 1990, is ineligible for USDA farm benefits, whether or not the person actually grows crops on the converted wetland. A person who converts a wetland after December 23, 1985, but before November 29, 1990, *and* who grows crops on that converted wetland, is similarly ineligible for USDA farm benefits. 16 U.S.C. § 3821; *U.S. v. Dierckman*, 201 F.3d 915, 917-18 (7th Cir. 2000).

The Swampbuster provisions authorize the USDA to determine whether a particular wetland has been converted. 16 U.S.C. §§ 3801(a)(21), 3821(e). The NRCS is the agency within the USDA that is responsible for investigating complaints and making technical determinations about possible Swampbuster violations. 7 C.F.R. § 12.30(a)(6).

Wetlands that were farmed before December 23, 1985, whether under naturally occurring conditions or through the alteration or manipulation of the wetland's natural drainage capacity, are grandfathered in as "farmed wetlands" and are not considered "converted" under the Swampbuster provisions. 7 C.F.R. §§ 12.32(b)(2), 12.33(a). Farmed wetlands may continue to

be farmed without penalty. 7 C.F.R. § 12.33(a). Any alteration or manipulation to the farmed wetland's naturally occurring drainage capacity that predates December 23, 1985 may be maintained, "provided that the maintenance does not exceed the scope and effect of the original," and that the area is not abandoned. 7 C.F.R. § 12.33(d). If, however, a farmed wetland is manipulated to increase its drainage capacity beyond that which existed before December 23, 1985, the wetland loses its farmed-wetland status, and becomes a converted wetland — that is, a Swampbuster violation. 7 C.F.R. §§ 12.33(a), (d).

### B. *The Site*

DSFS is a grain-farming operation located in Otter Tail County, Minnesota. Since 1983, DSFS has leased and continuously farmed Tract 1452, a land-locked, 80-acre field in Otter Tail County. NAD Hrg. Tr. 31; DSFS Br. S.J. at 4. A two-acre wetland is located in the far southeast corner of the field, adjacent to the field's access road. DSFS Br. S.J. at 1, 4. A strip of land measuring roughly 15 feet by 100 yards runs through the center of the wetland. NAD Hrg. Tr. 51. This strip of land is populated with wetland plants such as cattails and bulrushes and has been left largely undisturbed to the present day. *Id*. In April 1988, the Soil Conservation Service designated the wetland as a "prior converted" (i.e., farmed) wetland. Administrative Record ("AR") 198.

### C. *Agency Investigation*

In November 2007, the NRCS received a whistleblower complaint accusing DSFS of converting a portion of the wetland. AR 92. The NRCS sent a team of scientists to investigate the site in May 2008 and again in September 2008. AR 94. On September 22, 2008, the NRCS issued a "preliminary technical determination" that DSFS had indeed converted the wetland

sometime in 2007. AR 4. The preliminary technical determination became final on October 22, 2008. AR 7. DSFS timely appealed the technical determination to the National Appeals Division ("NAD"). AR 10; 7 U.S.C. § 6991(2)(F).

### D. The NAD Appeal

The NAD conducted a hearing on DSFS's appeal on January 8, 2009. AR 473. At the hearing, DSFS presented testimony from environmental scientist and certified wetland delineator Mark Aanenson, soils scientist Bruce Seelig, longtime DSFS employee Arno Steyn, and DSFS president David Stock.

At the NAD hearing, DSFS had the burden of proving by the preponderance of the evidence that the NRCS's conversion determination was erroneous. 7 C.F.R. § 11.8(e). DSFS did not contest that the area in question was a wetland, nor that it had been filled. DSFS did deny, though, that fill had been placed at the site in 2007. Stock testified that in October 1985, he had installed 10-inch tile to drain the wetland across the property of the neighbor to the south. NAD Hrg. Tr. 35. At that time, he said, he dug an open ditch that ran through the wetland, out its northeast end, and along the eastern property boundary. *Id*. at 37. Stock testified that he then used the soil dug from the ditch to contour and fill the wetland to create a slope more suitable for farming. *Id*. at 37-39. He insisted that no fill has been placed in the wetland since this work was done in 1985. *Id*. at 39. According to DSFS, the only earth-moving work done in the field in 2007 was some properly permitted maintenance work on a drainage ditch that runs through the center of the field, well away from the wetland. DSFS Br. S.J. at 9-10.

The NRCS presented in-person testimony from area engineer Scott Smith and soils scientist Jeff Hellerich. The hearing officer also received evidence, in the form of a four-page

affidavit, from wetland biologist Lenore Marken. Marken had performed on-site research for the NRCS but had since left the agency. These three individuals formed the core of the NRCS team that investigated the whistleblower complaint and made the wetland-conversion determination.

After the NRCS team concluded that a two-acre wetland existed at the site and that it had been filled — again, facts that DSFS does not dispute — the scientists turned their attention to the question of *when* the fill had been placed in the wetland. Their analysis involved two types of evidence: soil borings taken at various locations in the wetland, and aerial photographs of the field that had been taken annually from 1981 through 2008.

Hellerich described the evidence gleaned from soil borings taken from ten different locations within the wetland basin. In a soil sample taken near the center of the wetland, Hellerich identified the presence of 34 inches of topsoil fill. NAD Hrg. Tr. 198. Other soil borings revealed that the depth of fill tapered to zero inches at the wetland's edges. *Id*. Hellerich identified undecomposed vegetation, notably corn stalks, mixed throughout the fill. *Id*. at 199-200. No undecomposed vegetation was mixed into the residual soil below the fill, even where the layer of fill was thinner. *Id*. at 204. In other words, there was a clear delineation between the residual soil and the fill that had been placed on top of it.

The NRCS next reviewed aerial photographs taken during the growing season in the years 1981 through 2008. Marken concluded from those photographs that the uncropped wetland that is visible in the 2008 aerial photograph is smaller than in any year since 1981. AR 450. Based

on the changes in wetland size and characteristics that were apparent in the aerial photographs, Marken concluded that the conversion had occurred in 2007. *Id*.[1]

On February 18, 2009, the NAD hearing officer issued a decision upholding the NRCS's decision. AR 74-77. The decision addressed each of DSFS's principal arguments in turn.

1. Deep Tillage

DSFS argued at the NAD hearing that the undecomposed corn stalks present in the fill were a result of deep tilling. Deep tilling is a farming practice that deepens the soil profile by incorporating air and crop residue into the soil with heavy equipment pulled by a tractor. NAD Hrg. Tr. 26-27. The equipment that DSFS uses allows it to till to a maximum depth of at least 30 inches. *Id*. at 130. In 2007, due to wet conditions, some corn was blown down in the field. *Id*. at 71. Steyn (an employee of DSFS) testified that he cut the blown-down corn stalks into small pieces and then deep tilled the pieces into the soil. *Id*. at 135-36. This, according to DSFS, was the reason why undecomposed vegetation was found in the topsoil in the wetland. AR 462. Furthermore, Steyn testified that in 2005, 2006, and 2007, heavy equipment frequently became stuck in the mud in and around the wetland, leaving deep ruts. NAD Hrg. Tr. 132-33. Steyn routinely filled the ruts with soil, which DSFS contended also caused undecomposed vegetation

---

[1] Marken also concluded from the photographs that the wetland had not been consistently cropped from year to year. AR 450. Marken appeared to cite this fact primarily to support her conclusion that the area in question *was* a wetland; her finding of inconsistent cropping seems to have played little role in the NRCS's determination about when fill was placed in the wetland or the NAD hearing officer's decision to uphold the NRCS's determination. Indeed, the NAD hearing officer specifically said that whether or not the site had been cropped consistently was not relevant to its determination about when fill was placed in the wetland. AR 76. DSFS objects to Marken's conclusion that the wetland was not consistently cropped. But given that DSFS agrees that the site was a wetland, and given that the agency did not rely on the finding of inconsistent cropping in deciding that the fill had been placed in 2007, the Court does not understand the relevance of DSFS's objection, and thus will not address it.

to become mixed into the topsoil — and at depths below the 30-inch limit of the deep-tilling equipment. *Id.* at 77, 133.

In his appeal determination, the NAD hearing officer did not specifically address DSFS's rutting argument, but he concluded that DSFS's deep-tillage argument was "not persuasive." AR 76. The undecomposed corn stalks were not found throughout the site at a uniform depth, as might be expected if they had been mixed into the soil through deep-tilling equipment. Moreover, they were found only in the fill, not in the residual soil — which, in places, was covered by only a thin layer of fill. *Id*. The hearing officer concluded that, if the vegetation in the soil was truly the result of deep tillage, the vegetation would have been distributed at a uniform depth throughout the soil — and would have been found in both the fill and the residual soil. *Id*.

2. Source and Volume of Fill

DSFS also argued that the NRCS had not identified the source of the fill. According to DSFS, aerial photographs did not indicate the existence of a nearby "borrow site" from which topsoil could have been removed. Therefore, DSFS reasoned, if DSFS had converted the wetland in 2007, it necessarily would have brought in fill from an offsite location. AR 461. Aanenson (DSFS's wetland delineator) testified that there were approximately 3,000 cubic yards of fill at the site — enough to fill about 300 dump trucks. NAD Hrg. Tr. 152-53. DSFS argued that if such a large quantity of fill had been trucked to the wetland, the neighbors surely would have noticed and complained. AR 461-62. And yet the NRCS did not present the testimony of any neighbor that he or she saw a procession of dump trucks heading to and from the field in fall 2007.

DSFS also made an economic argument. According to DSFS, the cost to DSFS of trucking in 3,000 cubic yards of fill would have exceeded the additional income that DSFS would have gained from improving agricultural production on the two-acre wetland. It would not have made economic sense for DSFS to do what the NRCS accused it of doing. AR 461.

The NAD hearing officer concluded that "[t]he source of the fill material is not relevant to the issue in this case" because the NRCS was not required to identify the source of fill, but only to determine whether fill was placed in the wetland after December 23, 1985. AR 76. Based on (1) the presence of undecomposed vegetation in the fill (suggesting that the fill had been placed recently), (2) the fact that the undecomposed vegetation was present only in the topsoil and not in the residual soil (as would be expected if the vegetation had been introduced into the soil through tilling, as DSFS claimed), and (3) the fact that the depth of the vegetation-laden fill varied from 34 inches to an inch or two (as would *not* be expected if the vegetation had been introduced into the soil through tilling), the hearing officer found that the filling had occurred "well after December 23, 1985, with 2007 as the likely year." *Id*.

### E. DSFS Seeks Judicial Review

DSFS filed this lawsuit seeking judicial review of the NRCS's decision that it had placed fill in the wetland in 2007. DSFS argues that the NRCS's decision — as upheld by the NAD — is unsupported by substantial evidence. DSFS seeks to have defendants' adverse findings set aside and seeks an award of the fees incurred in connection with this lawsuit. The parties bring cross-motions for summary judgment.

## II. ANALYSIS

### A. Standard of Review

Because the NAD's decision is a "final determination of the Department of Agriculture," judicial review of the decision is governed by the APA. AR 76; 7 U.S.C. § 6999. Under the APA, an agency decision will be set aside if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). To uphold an agency's factual finding under the substantial-evidence standard, three things must be true: First, the agency's finding "must be supported by some substantial level of evidence," though it need not be supported by a preponderance of the evidence. *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 919 (8th Cir. 2004). Second, the evidence must be substantial in light of the entire record, including evidence contrary to the agency's eventual conclusion. *Id*. And third, the evidence must make it possible for a reasonable fact finder to reach the same conclusions reached by the agency. *Id*.

A court's inquiry must be "searching and careful," but "the ultimate standard of review is a narrow one." *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). The court may not substitute its judgment for that of the agency. *Id.* Further, when a dispute is primarily factual and "requires a high level of technical expertise, " resolution of the dispute "is properly left to the informed discretion of the responsible federal agencies." *Kleppe v. Sierra Club,* 427 U.S. 390, 412 (1976); *see also Friends of the Boundary Waters Wilderness v. Dombeck,* 164 F.3d 1115, 1128 (8th Cir. 1999). The possibility of drawing inconsistent

conclusions from the evidence does not mean that the agency's findings are not supported by substantial evidence. *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981); *see also Erickson Transp. Corp. v. Interstate Commerce Comm'n,* 728 F.2d 1057, 1063 (8th Cir. 1984).

In their brief, defendants argue that the agency's conclusion that DSFS converted the wetland in 2007 is correct for reasons that were not mentioned by the NRCS or the NAD in the course of the agency proceedings, but that are nevertheless supported by evidence in the administrative record. The Court will ignore these arguments. As the government should know, the Court "may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990).

## B. Agency Determination

The parties agree that the site in question is a two-acre wetland that has been filled and farmed. AR 459. The parties do not agree about *when* the fill was placed in the wetland. If all of the fill present in the wetland was placed there in 1985, as DSFS contends, then the area remains a farmed wetland, and DSFS is eligible to receive USDA farm benefits. If fill was placed there in 2007, as the NRCS contends, then the site is now a converted wetland, and DSFS is ineligible to receive USDA farm benefits.

It is important to emphasize that the question before the Court is not when the fill was placed in the wetland. Instead, the question before the Court is whether the *agency's* determination that the fill was placed in the wetland in 2007 is supported by substantial evidence. As in any APA review, it is not the Court's prerogative to "re-try" the case. *Citizens to Pres. Overton Park*, 401 U.S. at 416. Even if the Court finds that the agency's determination was

likely *wrong* — that is, even if the Court concludes that the agency's determination was not supported by a preponderance of the evidence — the Court must uphold the determination if it is nevertheless supported by substantial evidence.

DSFS argues that the record contains evidence that undermines the agency's conclusions, and that once this evidence is taken into account, "there is not sufficient evidence which 'a reasonable mind [might] accept as adequate [. . .] support' for the conclusion that [DSFS] converted the wetland in 2007." DSFS Br. S.J. at 23 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). Specifically, DSFS argues that (1) it submitted evidence supporting an alternative explanation for the presence of undecomposed corn stalks in the topsoil; (2) the conclusions that Marken drew from the aerial photographs are not reasonable; and (3) the agency has not adequately explained how or why DSFS would have moved 3,000 cubic yards of fill to the site.

1. DSFS's Alternative Explanation

DSFS argues that the reason why undecomposed vegetation was found at inconsistent depths throughout the site was because of a combination of its use of deep tilling and its practice of filling in the deep ruts that formed when heavy equipment became mired in mud. DSFS Br. S.J. at 21-22. But in agency proceedings (as in court proceedings), two reasonable factfinders can look at the same evidence and draw different conclusions; that does not mean that either conclusion is unsupported by substantial evidence. *Am. Textile Mfrs.*, 452 U.S. at 523. In such cases, the agency is entitled to rely on the opinion of its own experts. *Cent. S.D. Coop. Grazing Dist. v. Sec'y of U.S. Dep't of Agric.*, 266 F.3d 889, 899 (8th Cir. 2001).

Moreover, the agency's explanation for rejecting DSFS's theory is convincing. As the agency pointed out, if the undecomposed corn stalks had been introduced into the soil through deep tilling, then the stalks should have been distributed throughout the site at a uniform depth. They were not. DSFS's claim that soil was used to fill deep ruts explains why stalks were found deeper than the 30-inch reach of the tilling equipment. But it does not explain why stalks were not found in residual soil, even when the residual soil was covered by only a thin layer of fill. Before neither the agency nor this Court has DSFS been able to reconcile its "deep tilling" theory with the fact that *none* of the undecomposed corn stalks were found in the residual soil. In short, while DSFS's explanation is possible, it does not seem likely, and it does not place much of a dent in the agency's finding that the wetland was converted in 2007.

2. Aerial Photographs

Although DSFS acknowledges that an agency may rely on the reasonable opinions of its own qualified experts, *see Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989), it contends that the opinions that Marken formed based on the aerial photographs are not reasonable in two respects. DSFS Br. S.J. at 24. First, DSFS contests Marken's conclusion that the wetland visible in the 2008 photograph is smaller than the wetland visible in any previous photograph since 1981. *Id*. at 25-26. Second, it argues that Marken's affidavit does not account for a hydrological change to the site that, DSFS maintains, occurred sometime between 1985 and 1986. *Id*. at 26.

Aanenson (DSFS's wetland delineator) testified that, contrary to Marken's conclusion, the wetland visible in the 1989 photograph is no smaller than the wetland visible in the 2008 photograph. NAD Hrg. Tr. 156-57. But drawing conclusions based on a comparison of the two

photographs is akin to drawing conclusions based on a comparison of two x-rays or two sonograms. It very much depends on highly specialized education and experience — education and experience that this Court does not have. The photographs depict the wetland and the surrounding landscape at different scales, and the photographs display substantial differences in exposure, resolution, coloration, and level of detail. *Compare* AR 178 *with* AR 161. Based on the evidence in the record, the Court does not have the ability to know what caused these differences, or to what extent any of these differences is significant. And the Court does not have the ability to identify the size and shape of a particular wetland shown in a particular aerial photograph.

In circumstances such as these, the Court must defer to the agency's analysis "unless it is without substantial basis in fact." *Fed. Power Comm'n v. Fla. Power & Light Co.*, 404 U.S. 453, 463 (1972). Marken gave a specific, reasoned explanation for her conclusions. Reviewing the photographs and Aanenson's testimony about the photographs, the Court cannot conclude that Marken's determination that the wetland in the 2008 photograph is smaller than the wetland in the 1989 photograph is without substantial basis in fact.

DSFS also argues that Marken's analysis of the aerial photographs does not account for a hydrological difference evident between the pre-1985 and post-1985 aerial photographs. DSFS Br. S.J. at 26. It contends that aerial photographs taken prior to 1985 show standing water in numerous areas around the field, including around the wetland at issue in this case, *e.g.*, AR 183, while post-1985 aerial photographs show a field that is inundated in other areas but not near the wetland at issue here, *e.g.*, AR 162, 163, 170. DSFS seems to argue that this phenomenon can be explained (or perhaps, that it can *only* be explained) by the filling that it maintains was done in

1985, and suggests that, properly understood, the aerial photographs lend credence to its own contention that the wetland was filled in 1985.[2]

But the NRCS has never *denied* that the wetland was filled in 1985. And, in fact, the NAD hearing officer specifically found that DSFS installed 10-inch tile in the wetland in 1985 — which, of course, may very well have prevented the wetland from accumulating standing water in subsequent years. AR 75. Thus DSFS's evidence does not substantially undermine the conclusion of the NRCS that fill was *also* placed in the wetland in 2007.

### 3. Source and Volume of Fill

DSFS argues that, based on the sheer volume of topsoil that would have been required to fill the wetland in the manner suggested by the NRCS, it is simply implausible that DSFS could have converted the wetland in 2007. DSFS argues that, for various reasons, late fall is the only time during 2007 that the wetland could have been converted. DSFS Br. S.J. at 24. DSFS further argues that, based on the fact that no "borrow site" is evident in an aerial photograph of the field taken in the fall of 2007, any fill would have been trucked in from another site. DSFS Br. S.J. at 24. DSFS argues that it would have been utterly illogical for it to have stripped valuable topsoil from another of its fields and paid to transport the topsoil to the wetland, just to convert a two-acre site into "marginal crop land at best." DSFS Br. S.J. at 25. Finally, DSFS points out that the NRCS has failed to introduce any evidence that any neighbor complained of a caravan of dump trucks hauling dirt to the wetland. DSFS Br S.J. at 25.

---

[2] DSFS also argues that a remnant of the ditch that Stock says he dug in 1985 at the northeast corner of the wetland is visible in the 1989 photograph, but the quality of the photograph is poor, and the Court cannot tell if DSFS is correct. DSFS Br. S.J. at 26, AR 178.

The NAD hearing officer responded to DSFS's arguments about the amount and source of the fill by stating that the agency's only obligation was to show that the wetland was filled after December 23, 1985, not the source of the fill. AR 76. And the NAD hearing officer was correct, as far as he went: The NRCS's job was to determine *when* fill had been placed in the site, not *where* the fill had come from. Thus it is hardly surprising that the NRCS was not prepared to introduce evidence about the source of the fill.

That said, the Court would have preferred that the NRCS or the NAD have addressed DSFS's argument on the merits. DSFS took the conclusion of the agency (that topsoil was placed in the wetland in 2007), asserted that the agency's conclusion relied on a series of assumptions, and argued that those assumptions were implausible. The NRCS or the NAD should have at least taken a stab at explaining why the agency's conclusion did not rest on the assumptions identified by DSFS, or why those assumptions were not implausible. For example, the agency might have argued that topsoil could have been removed from near the wetland after the aerial photograph was taken in 2007, and evidence of that removal might not have been visible on the aerial photograph taken in 2008. Or the agency might have pointed out that, even if it is true that topsoil was not taken from a site near the wetland, that does not mean that topsoil was taken from another field owned or leased by DSFS; the topsoil might have come from a contractor excavating the site of a new road or bridge or building. Or the agency might have explained that, because it has limited resources, and because it was confident in its conclusions

based on the soil borings and aerial photographs, it did not need to go door-to-door to ask one neighbor to tattle on another.³ The agency said none of this.

If the Court were deciding this dispute as an initial matter, the Court might have difficulty finding that the NRCS had proven, by a preponderance of the evidence, that DSFS converted the wetland in 2007. Again, though, for purposes of APA review, the evidence relied on by the agency "need not rise to the level of a preponderance" to be substantial. *Menendez-Donis*, 360 F.3d at 919. Moreover, the issues surrounding wetland conversion in a Swampbuster case are "classic examples of factual disputes implicating substantial agency expertise." *Downer v. United States*, 97 F.3d 999, 1002 (8th Cir. 1996). In such circumstances, the agency may "rely on the reasonable opinions of its own qualified experts even if, as an original matter, the court might find contrary views more persuasive." *Marsh v. Or. Natural Res. Council*, 490 U.S. at 378.

At the end of the day, the NRCS has made some points that DSFS has not convincingly rebutted, and DSFS has made some points that the NRCS has not convincingly rebutted. But when the Court looks at the record as a whole — and, in particular, when the Court considers the strength of the soil-boring evidence and the implausibility of DSFS's explanation of that evidence, and when the Court gives appropriate deference to Marken's expert conclusions

---

³Of course, it is possible that the whistleblower complaint that triggered the NRCS investigation came from just such a neighbor. The record is unclear about the details of that complaint.

regarding the aerial photographs — the Court finds that the agency's ultimate determination that DSFS converted the wetland in 2007 is supported by substantial evidence.[4]

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of plaintiff David Stock Farm Services, Inc., [Docket No. 18] is DENIED;

2. The motion for summary judgment of defendants Natural Resources Conservation Service and United States Department of Agriculture [Docket No. 14] is GRANTED; and

3. Plaintiff's complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 27, 2010         s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge

---

[4] DSFS asks the Court to remand this case so that the NAD can enter an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. DSFS Br. S.J. at 26. But because DSFS is not the "prevailing party," DSFS cannot recover its attorney's fees. 5 U.S.C. § 504.